UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

MICHAEL A. ESPOSITO,       )
                           )
        Plaintiff,         )
                           )
v.                         )          2:15-cv-00263-GZS
                           )
SCOTT LANDRY, et al.,      )
                           )
        Defendants         )

## RECOMMENDED DECISION

In this action, Plaintiff Michael Esposito, an inmate at the Maine Correctional Center,

alleges that Defendants, inter alia, deprived him of his constitutional right to receive necessary

medical care.  The matter is before the Court on the motion to dismiss (Motion, ECF No. 27) of

Defendants Paul Cumming, David Curtis, Joseph Fitzpatrick, Scott Landry, and Dennis Shipman

(the "State Defendants").

As explained below, following a review of the pleadings, and after consideration of the

parties' arguments, I recommend that the Court grant the motion.

## BACKGROUND

The facts set forth herein are derived from Plaintiff's complaint and his amended

complaint, which facts are deemed true when evaluating the motion to dismiss.[1]  *Beddall v. State*

*St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

Joseph Fitzpatrick is the Commissioner of the Maine Department of Corrections.

(Complaint ¶ 4, ECF No. 1.)  Scott Landry is the Warden of the Maine Correctional Center.  (*Id.*

¶ 5.)  Paul Cumming is a sergeant at the Center.  (*Id.* ¶ 11.)  David Curtis is a corrections officer.

---

[1] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

(*Id.* ¶ 10.)  Dennis Shipman is a captain and holds the position of Grievance Review Officer.  (*Id.* ¶ 12.)

Plaintiff has hemophilia.  (*Id.* ¶ 15.)  On May 7, 2015, Plaintiff experienced a nosebleed while locked in his cell.  He immediately notified Defendant Curtis, who asked whether it was an emergency.  (*Id.* ¶¶ 18 – 19.)  Plaintiff stated that it was an emergency because he had a bleeding disorder.  (*Id.* ¶ 19.)  Defendant Curtis did not call medical, and Plaintiff's nosebleed stopped in approximately one hour.  (*Id.* ¶¶ 20 – 21.)  An hour after his nosebleed stopped, Plaintiff experienced another nosebleed episode.  (*Id.* ¶ 22.)  A different corrections officer responded to Plaintiff's request for attention and the officer called a nurse to assist.  (*Id.* ¶¶ 23 – 24.)

Plaintiff alleges that he did not receive appropriate medical care on May 7, May 8, and May 9.  Other than the allegations regarding the nosebleeds that he experienced on May 7, the only other alleged incident involving the State Defendants occurred on May 9.  According to Plaintiff, on the evening of May 9, while in his cell, Plaintiff, after losing consciousness, was awakened by Defendant Cumming, who shouted at him to get up off the floor.  (*Id.* ¶ 64.)  Within a half hour, Plaintiff was seen by a nurse.  (*Id.* ¶ 67.)[2]

As part of his filings in this case, Plaintiff submitted a grievance form that he completed on May 10, 2015.  In the grievance form, Plaintiff wrote that he should have been observed by an officer sometime during the overnight hours between May 7 and May 8, and that if the officers had looked into his cell during the night, they would have seen blood and he would not "have almost bled to death."  (ECF No. 1-1.)  Additionally, Plaintiff wrote that he "bled out for 3 days … and even past [sic] out Saturday and smashed my head on the wall in my room and had blood

---

[2] The balance of the allegations in Plaintiff's complaint and in his supplement (ECF No. 9) relate to the medical attention that he received from the Center's medical providers, who are named as Defendants in this action, but are not the subjects of the motion to dismiss.

everywhere." (*Id.*)  Plaintiff also filed with his original complaint a dismissal notice signed by Defendant Shipman on June 18, 2015.  (ECF No. 1-2.)  In the notice form, Defendant Shipman noted:  "Claiming you bled out for three days is obviously frivolous."  (*Id.*)

Plaintiff also filed two requests for injunctive relief.  In his requests, Plaintiff asserted that in retaliation for the commencement of this action, Defendant Landry, who reviews visitation applications, denied an application submitted by Plaintiff's fiancé to visit with Plaintiff.  (PageID # 71, ¶¶ 8 – 9.)  On September 3, 2015, the Court denied Plaintiff's request for preliminary injunctive relief.  (Order, ECF No. 20, affirming Recommended Decision, ECF No. 11.)  On November 2, 2015, the Court similarly denied Plaintiff's request for a temporary restraining order. (Order, ECF No. 37, affirming Recommended Decision, ECF No. 32.)

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."   In its assessment of the motion, the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, the plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim at issue.  *Id.*

"The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina– Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 569

n.14 (2007)).  Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013).  *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

### DISCUSSION

Pursuant to the federal civil rights statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To maintain a claim under section 1983, a plaintiff must establish two things:  "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."  *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

In his complaint and amended complaint, Plaintiff asserts facts that can reasonably be construed to reflect his intention to assert a claim based on the State Defendants' lack of attention to and failure to treat appropriately Plaintiff's medical needs.  Under certain circumstances, prison

officials' failure to attend to an inmate's medical needs can constitute a violation of the Eighth Amendment to the United States Constitution.

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "From this brief amendment, courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." *Id.* (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).

To succeed on a claim of inadequate or delayed medical care, a plaintiff must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011). The objective standard evaluates the seriousness of the risk of harm to health. There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)). The subjective standard concerns the individual culpability of the defendant. A plaintiff must present evidence that the defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney v. Corr. Med. Servs.*, *Inc.*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference

analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

Defendants first argue that Plaintiff has failed to state a claim against Defendants Curtis and Cumming because he does not allege any facts that could reasonably be construed to support the conclusion that Plaintiff experienced a serious medical need, or that Defendants did not respond appropriately to Plaintiff's medical need.  (Motion at 4 – 6.)  Defendants also contend that Defendant Shipman's dismissal of Plaintiff's grievance did not amount to a constitutional violation.  (*Id.* 6 – 7.)  Finally, Defendants maintain that Plaintiff has failed to allege any direct involvement of Defendants Landry and Fitzpatrick, and otherwise their subordinates' conduct did not violate Plaintiff's constitutional rights.  (*Id.* at 7 – 8.)

Plaintiff argues that Defendant Curtis's failure to call medical is "mistreatment" or "non-treatment" and that Defendant Curtis failed to act because his shift was about to end.  (Response ¶¶ 3 – 4, ECF No. 30.)  Plaintiff maintains that a corrections officer must call medical in response to a nosebleed if it does not stop within ten to fifteen minutes.  (*Id.* ¶ 5, citing Ex. A, Correct Care Solutions Standard Operating Procedure for use of Stimate Medication, ECF No. 30-1.)  Plaintiff also argues that his situation was more serious because of his bleeding disorder.  (*Id.* ¶ 8.)

As to Defendant Cumming, Plaintiff contends that Defendant Cumming failed to act appropriately because by the time he yelled for Plaintiff to get up off the floor, Plaintiff had been having nosebleeds for two days, and because Defendant Cumming took a picture of Plaintiff's nose, which had a "golf ball size bump" on it.  (*Id.* ¶¶ 10 – 11.)  With respect to Defendant Shipman, Plaintiff argues that Defendant Shipman is legally responsible because he dismissed the resulting grievance with the knowledge that a dismissal would prevent an appeal to the warden.  (*Id.* ¶ 13.)  Plaintiff does not explain the basis of his deliberate indifference claim against Defendants Landry

and Fitzpatrick.  He asserts, however, that because he had previously been in the custody of the Maine Department of Corrections, the State Defendants had prior knowledge of his bleeding disorder.  (*Id.* ¶¶ 24 – 26, citing Ex. B, Correct Care Solutions evaluation form indicating Plaintiff's diagnosis of Von Willebrand disease, ECF No. 31-2.)

Plaintiff has not alleged that the State Defendants directly participated in his medical care. Plaintiff's claim, therefore, cannot be based on the quality of care that he received.  The issue is whether Plaintiff has asserted facts that could reasonably support the conclusion that the State Defendants' response to Plaintiff's nosebleeds in May 2015 constitutes deliberate indifference.

First, a nosebleed is not a condition that would ordinarily mandate medical treatment. Plaintiff thus has arguably not alleged a serious medical need.  Even if one assumes that Plaintiff's medical condition was "serious" and within the protection of the Eighth Amendment, Plaintiff has not alleged facts that would support the conclusion that the State Defendants' response was constitutionally deficient.  Although he maintains that the Department of Corrections was aware of his bleeding condition due to his earlier incarceration, Plaintiff has alleged no facts to suggest that Defendants Curtis and Cumming were aware of the condition.  Regardless of the knowledge of Defendants Curtis and Cumming, given that Plaintiff's initial nosebleed stopped and that a nurse was summoned within a reasonable period of the start of the second nosebleed, the facts are insufficient to support the conclusion that their response was constitutionally lacking.

Plaintiff's claims regarding Defendant Cumming's response to the condition of Plaintiff in his cell also fail to generate a constitutional issue.  While Plaintiff contends that he was bleeding for a couple of days, he has not alleged any facts to suggest that Defendant Cumming was aware of Plaintiff's situation or was otherwise responsible for monitoring Plaintiff.  In addition, even if

Defendant Cumming yelled at Plaintiff as Plaintiff asserts, Defendant Cumming's alleged conduct cannot reasonably be construed as deliberate indifference.

Finally, Plaintiff's assertion that Defendant Shipman denied Plaintiff's grievance cannot support a constitutional claim. *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (holding that the denial of administrative grievances and the failure to remedy the alleged retaliatory behavior do not give rise to liability absent evidence of direct participation, encouragement, authorization, or acquiescence in the alleged violation). Similarly, Plaintiff has not alleged any facts to support a supervisory claim against Defendants Landry and Fitzpatrick. "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Ocasio–Hernandez v. Fortuno–Burset,* 640 F.3d 1, 16 (1st Cir. 2011) (quoting *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 768 (1st Cir. 2010)). Plaintiff has not alleged any direct acts committed by Defendants Landry and Fitzpatrick, nor has Plaintiff alleged that their subordinates committed any constitutional violations that Defendants Landry and Fitzpatrick condoned or authorized.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court grant Defendants' Motion to Dismiss (ECF No. 27), and dismiss from this action Defendants Cumming, Curtis, Fitzpatrick and Landry.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of November, 2015.