UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL A. ESPOSITO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00263-GZS |
| | ) | |
| SCOTT LANDRY, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION**

In this action, Plaintiff Michael Esposito, an inmate at the Maine Correctional Center, alleges that Defendants deprived him of his constitutional right to receive necessary medical care.

The matter is before the Court on the motion to dismiss (Motion, ECF No. 34) of Defendants Peter Briggs, Robert Clinton, Jen Patton, Crystal Perfect, Wendy Riebe, and Eric Shoaps. Because Plaintiff has not filed an objection to the motion, Plaintiff has waived objection to the motion. D. Me. Local Rule 7(b).

As explained below, following a review of the pleadings, and after consideration of the Defendants' arguments, I recommend that the Court grant the motion.

**BACKGROUND**

The facts set forth herein are derived from Plaintiff's complaint (ECF No. 1) and his amended complaint (ECF No. 9), which facts are deemed true when evaluating the motion to dismiss.[1] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

At all times relevant to this action, Defendants were agents of Correctional Care Solutions (CCS), a contract provider of medical services at the Maine Correctional Center. Defendant

---
[1] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

Clinton served CCS as a contract physician. Defendant Riebe served CCS as its Health Services Administrator. Defendants Briggs, Patton, Perfect, and Shoaps were nurses at the Maine Correctional Center. (Complaint ¶¶ 6 – 9; Am. Complaint ¶¶ 5 – 6.)

On May 7, 2015, while locked in his cell, Plaintiff, a hemophiliac, experienced a nosebleed that stopped in approximately one hour. (*Id.* ¶¶ 15, 21.) An hour after his nosebleed stopped, Plaintiff experienced another nosebleed. (*Id.* ¶ 22.) On this occasion, a corrections officer called a nurse to assist. (*Id.* ¶ 24.) After another hour, Defendant Patton arrived at Plaintiff's cell. (*Id.* ¶¶ 25 – 26.) Although Plaintiff informed Defendant Patton of his bleeding disorder and advised her that he should not have objects in his nose (*Id.* ¶ 28), Defendant Patton placed a tampon in Plaintiff's nose (*Id.* ¶ 27). Plaintiff went to bed, still bleeding, with a tampon in his nose. (*Id.* ¶ 30.)

When Plaintiff awoke the next morning, he was "covered in blood." (*Id.* ¶ 31.) Approximately a half hour later, Plaintiff went to the medical unit. (*Id.* ¶ 33.) Defendant Perfect packed Plaintiff's nose. (*Id.* ¶ 34.) Plaintiff informed Defendant Perfect of a spray that would stop the bleeding. (*Id.* ¶ 35.) Defendant Perfect looked for the spray and said she could not find it. (*Id.* ¶ 36.) Defendant Perfect said that Plaintiff's packed nose would be sufficient until the doctor arrived. (*Id.* ¶¶ 37 – 38.)

Because the bleeding in his nose did not stop, Plaintiff returned to medical at approximately 8:40 a.m. (*Id.* ¶ 39.) Defendant Perfect began to pack his nose once again, and Plaintiff renewed his request for the spray. (*Id.* ¶ 42.) Although another nurse located the spray, Defendant Perfect would not permit its use without instruction from the CCS doctor. (*Id.* ¶¶ 43 – 44.) At 10:15 a.m., Defendant Perfect provided Plaintiff with the spray. Plaintiff used the spray and the bleeding stopped within five minutes. (*Id.* ¶ 47.)

In the morning of May 9, Plaintiff experienced another nosebleed. He was promptly seen by a nurse, who provided Plaintiff with an application of the spray and his nose soon stopped bleeding. (*Id.* ¶¶ 49, 51.) In the afternoon, he suffered another nosebleed. (*Id.* ¶ 52.) Although a corrections officer called medical, no one answered. (*Id.* ¶ 53.) Plaintiff passed out, and Defendant Shoaps arrived at 5:52 p.m., and instructed Plaintiff to keep his head down and to pinch his nose. (*Id.* ¶¶ 57, 58.) Plaintiff told Defendant Shoaps that he should be taken to a hospital because he normally receives a DPAP when he continues to bleed for so long. (*Id.* ¶ 59.) Defendant Shoaps left Plaintiff, and returned with the nose spray at 6:15 p.m. On this occasion, the bleeding did not stop. (*Id.* ¶ 61.)

At 6:30 p.m., Plaintiff lost consciousness. (*Id.* ¶ 63.) He was awakened by a corrections officer shouting for him to get off the floor. (*Id.* ¶ 64.) Defendant Briggs arrived at 7:00 p.m., and told Plaintiff to stop making his nose bleed. (*Id.* ¶¶ 67 – 68.) Defendant Briggs told Plaintiff that there was no record of a bleeding disorder and that the CCS doctor was unaware of the disorder. (*Id.* ¶ 69.) Defendant Briggs instructed the corrections officer to leave Plaintiff in his cell overnight. (*Id.* ¶ 72.) Plaintiff alleges that there "was still blood on Plaintiff and in Plaintiff's cell." (*Id.* ¶ 73.)

On May 11, Plaintiff went to medical to inquire how they intended to treat him. (*Id.* ¶ 74.) Defendant Perfect told Plaintiff that Defendant Clinton was researching the issue. (*Id.* ¶ 75.) According to Plaintiff, Defendant Clinton refused to call Plaintiff's physician and also refused to refer Plaintiff to the hospital. (*Id.* ¶¶ 78 – 79.)

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon

which relief can be granted." In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome the motion, the plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim at issue. *Id.*

"The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 569 n.14 (2007)). Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## DISCUSSION

The federal civil rights statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."  *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

Defendants argue that dismissal is appropriate because Plaintiff has not alleged a constitutional deprivation for which he can recover under § 1983.  Plaintiff's allegations reflect that he intended to assert a claim of deliberate indifference.  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  "From this brief amendment, courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded."  *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)).  "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment."  *Id.* (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).

To succeed on a claim of inadequate or delayed medical care, a plaintiff must satisfy both an objective and a subjective standard.  *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).  The objective standard evaluates the seriousness of the risk of harm to health.  There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'"  *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even

a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)). The subjective standard concerns the individual culpability of the defendant. A plaintiff must present evidence that the defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney v. Corr. Med. Servs.*, *Inc.*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the [defendants] knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). "[T]he Constitution requires that care be not so inadequate as to shock the conscience." *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015) (quotation marks omitted).

Defendants argue that none of the individual incidents about which Plaintiff complains constitutes deliberate indifference to a serious medical need. Instead, Defendants maintain that at most, Plaintiff has described a difference of opinion as to the appropriate medical care for Plaintiff's nosebleeds.[2]

Assuming, arguendo, that with Plaintiff's bleeding condition, Plaintiff's nosebleeds constitute a serious medical need, the issue is whether Plaintiff has alleged sufficient facts to support a claim for deliberate indifference. As alleged, in each instance, while Plaintiff disagreed with the treatment protocol, Defendants assisted Plaintiff in a way that eventually stopped the nosebleeds. That is, Defendants did not ignore Plaintiff's complaints, but attended to Plaintiff on each occasion. Insofar as each Defendant attended to Plaintiff on each occasion, and rendered care to Plaintiff, none of Defendants' alleged actions can plausibly be construed as deliberate

---

[2] Defendants also argue that there can be no entity liability for CCS. (Motion at 18 – 19.) However, Plaintiff has not asserted a claim against CCS.

indifference despite Plaintiff's dissatisfaction with the treatment.  Plaintiff, therefore, has failed to state a claim against Defendants Briggs, Clinton, Patton, Perfect, Riebe and Shoaps.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court grant Defendants' Motion to Dismiss (ECF No. 34), and dismiss from this action Defendants Peter Briggs, Robert Clinton, Jen Patton, Crystal Perfect, Wendy Riebe, and Eric Shoaps.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of December, 2015.